## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

-------------------------------------------------- x

In re:                                          :   Chapter 11
                                                :
Nuo Therapeutics, Inc.                          :   Case No. 16-10192 (MFW)
                                                :
                    Debtor.                     :   **Related to Docket No. 7**
                                                :
-------------------------------------------------- x

### INTERIM ORDER UNDER SECTIONS 105, 361, 362, 363(c), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), AND 507 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 4001 AND 9014 (I) AUTHORIZING DEBTOR TO OBTAIN POSTPETITION FINANCING; (II) AUTHORIZING DEBTOR TO USE CASH COLLATERAL; (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES; (IV) SCHEDULING A FINAL HEARING AND (V) GRANTING RELATED RELIEF

Upon the motion, dated January 26, 2016 (the "**Motion**"), of Nuo Therapeutics, Inc., a Delaware corporation (the "**Debtor**") in the above-captioned case (the "**Case**") commenced on January 26, 2016 (the "**Petition Date**"), for interim and final orders under sections 105, 361, 362, 363(c), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as amended, the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (as amended, the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), seeking:

(i)      the authority for the Debtor to enter into that certain Senior Secured, Superpriority Debtor-in-Possession Credit Agreement dated as of January 28, 2016 (as amended, restated, supplemented or otherwise modified from time to time, the "**DIP Agreement**"), substantially in the form attached hereto as **Exhibit A**, together with the other agreements delivered or executed

from time to time in connection therewith (as hereafter amended, restated, supplemented or otherwise modified from time to time, together with the DIP Agreement, the "**DIP Documents**"), pursuant to which the Debtor shall (a) obtain up to $9,000,000 in aggregate postpetition senior secured super-priority debtor-in-possession financing ("**DIP Loan Facility**") and other extensions of credit from the lenders from time to time party thereto (initially, on the closing date, the "**Initial DIP Lenders**", and together with any other lenders from time to time party thereto, the "**DIP Lenders**") and Deerfield Mgmt, L.P., as the administrative and collateral agent (the "**DIP Agent**") and (b) grant security interests and liens and accord superpriority claim status in favor of the DIP Agent and the DIP Lenders pursuant to sections 361, 364(c) and 364(d)(1) of the Bankruptcy Code in accordance with the DIP Documents;[1]

(ii)    authorization for the Debtor to execute and deliver the DIP Agreement and the other DIP Documents and to perform such other and further acts as may be necessary or appropriate in connection therewith;

(iii)    authorization for the Debtor to use Cash Collateral (as defined in paragraph 4(i) below) pursuant to sections 361, 362 and 363 of the Bankruptcy Code, and all other Prepetition Collateral (as defined in paragraph 4(a) below);

(iv)    to grant adequate protection with respect to the use of Cash Collateral and any diminution in the value of the Prepetition Collateral (as defined below) securing the Debtor' Prepetition Secured Obligations (as defined below) under that certain Facility Agreement dated as of March 31, 2014 (as otherwise amended, restated, supplemented or modified from time to time, the "**Existing Facility Agreement**"), by and among the Debtor, on the one hand, and the lenders from time to time party thereto, on the other hand, together with the documents and

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the DIP Documents.

116499671v2

agreements related thereto or entered into in connection therewith (collectively, with the Existing Facility Agreement, the "**Prepetition Secured Agreements**");

(v)    at an interim hearing (the "**Interim Hearing**") on the Motion before this Court, pursuant to Bankruptcy Rule 4001, entry of this interim order (the "**Interim Order**"): (a) authorizing the Debtor, on an interim basis, to borrow under the DIP Agreement an aggregate principal amount not to exceed $1,500,000 at any time outstanding prior to the entry of the Final Order (as defined below); (b) authorizing the Debtor, on an interim basis, to use Cash Collateral and the other Prepetition Collateral; and (c) granting, on an interim basis, adequate protection to the Prepetition Secured Parties;

(vi)    scheduling, pursuant to Bankruptcy Rule 4001, a final hearing (the "**Final Hearing**") for this Court to consider entry of a final order (the "**Final Order**"), authorizing and approving on a final basis the relief requested in the Motion, including without limitation, the Debtor' ability on a final basis to utilize the DIP Loan Facility and the Debtor' ability to continue to use Cash Collateral and the other Prepetition Collateral, subject to the terms of the DIP Documents and the Final Order; and

(vii) granting other related relief as described in the Motion;

and the Court having held and concluded the Interim Hearing on January 28, 2016, and upon the record made by the Debtor at the Interim Hearing, including, without limitation, the admission into evidence of the **Declaration of David E. Jorden in Support of First Day Motions** [D.I. 3], the declaration of Shaun Martin (as financial advisor and CRO to the Debtor) in support of the Motion [D.I. 9], and the declaration of Peter S. Kaufman (as investment banker and financial advisor to the Debtor) in support of the Motion [D.I. 11], each of which was filed with the Court, and the other evidence submitted or adduced and the arguments of counsel made

- 3 -

at the Interim Hearing, and notice of the Interim Hearing having been given in accordance with the Bankruptcy Rules; and all objections to the relief requested in the Motion having been withdrawn, resolved, or overruled by the Court; and it appearing to the Court that the interim relief set forth in this order is fair and reasonable and in the best interests of the Debtor, its estate, its creditors, and other parties in interest, and is essential for the continued operation of the Debtor's business; and it further appearing that the Debtor was unable to obtain unsecured credit for money borrowed allowable as an administrative expense under section 503(b)(1) of the Bankruptcy Code; and adequate protection being provided on account of the interests of certain holders of liens on the property of the estate on which liens are to be granted; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED**, as applicable, on an interim basis, that:

1.      <u>Grant of Motion</u>.  The Motion is hereby GRANTED on an interim basis as hereinafter set forth.  Any and all objections to the relief requested in the Motion, to the extent not withdrawn with prejudice, waived or resolved by consent at or before the Interim Hearing, are hereby OVERRULED and DENIED.  The amount of DIP financing that the Debtor is authorized to borrow prior to entry of the Final Order is set forth in paragraph 10.(a) below.

2.      <u>Jurisdiction/Venue</u>.  This Court has core jurisdiction over the Case, the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. The Court may enter a final order consistent with Article III of the United States Constitution. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      <u>Notice</u>.  The Interim Hearing was held pursuant to the authorization of Bankruptcy Rules 2002, 4001(b), (c), and (d) and Rule 9014, and the Local Rules.  The Debtor

116499671v2

has represented that notice of the Interim Hearing and the emergency relief requested in the Motion has been provided by the Debtor to certain parties in interest, including: (a) the Office of the United States Trustee; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) counsel to Deerfield Management Company, L.P.; (d) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (e) any such other party entitled to notice pursuant to Rule 9013-1(m) of the Local Rules. Under the circumstances, such notice of the Interim Hearing and the relief requested in the Motion complies with Bankruptcy Rules 2002 and Local Rule 4001-2.

4.    <u>Debtors' Stipulations and Releases</u>. Without prejudice to the rights of any other party (but which rights are subject to the limitations thereon contained in paragraph 24 of this Interim Order), the Debtor admits, stipulates and agrees that:

(a)    as of the Petition Date, the Debtor, without defense, counterclaim, recoupment or offset of any kind, is indebted and liable to the Prepetition Secured Parties in the aggregate principal amount of $35,000,000 of outstanding borrowings under the Prepetition Secured Agreements, plus accrued interest asserted in the amount of $3,288,421.67, plus all costs, fees, expenses (including attorneys' fees and legal expenses) and other charges accrued, accruing or chargeable with respect thereto (collectively, the **"Prepetition Secured Obligations"**), which Prepetition Secured Obligations are secured by (i) first-priority security interests in and liens on substantially all of the Debtor's assets, including accounts, inventory, contract rights, instruments, documents, chattel paper, drafts and acceptances, general intangibles and all other forms of obligations owing to the Debtor (and the proceeds, product and

- 5 -

offspring therefrom, collectively, the **"Prepetition Collateral"**) all as more fully described in the Prepetition Secured Agreements;

(b)    the Prepetition Secured Obligations constitute the legal, valid and binding obligations of the Debtor, enforceable in accordance with their terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code);

(c)    the liens granted to the Prepetition Secured Parties on the Prepetition Collateral pursuant to and in connection with the Prepetition Secured Agreements (collectively, the **"Prepetition Liens"**), including, without limitation, all security agreements, pledge agreements and other security documents executed by any of the Debtor for the benefit of the Prepetition Secured Parties, are (i) valid, binding, perfected and enforceable liens and security interests in the property described in the Existing Credit Facility Agreement, (ii) not, pursuant to the Bankruptcy Code or other applicable law, subject to avoidance, recharacterization, recovery, subordination, attack, offset, recoupment, counterclaim, defense or "claim" (as such term is defined in the Bankruptcy Code) of any kind, and (iii) subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve-Out (as defined below) to which the DIP Liens are subject and (C) valid, perfected and unavoidable liens and security interests permitted under the Existing Facility Agreement and existing as of the Petition Date;

(d)    no portion of the Prepetition Secured Obligations or any payments made to the Prepetition Secured Parties or applied to the Prepetition Secured Obligations prior to the Petition Date is subject to avoidance, recharacterization, recovery, subordination, attack, offset, counterclaim, defense or "claim" (as such term

- 6 -

is defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or other applicable law;

  (e) subject to entry of the Final Order, the Debtor hereby forever waives and releases any and all "claims" (as such term is defined in the Bankruptcy Code), counterclaims, causes of action, defenses and setoff rights against the Prepetition Secured Parties, in their capacities as such, whether arising at law or in equity, including, without limitation, any recharacterization, subordination, avoidance or other claim arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state or federal law; provided, however, that the waivers and releases set forth herein shall not be binding on any other party in interest except as set forth in paragraph 24 hereto, and provided further that nothing herein or in any of the DIP Documents shall operate as a release or waiver of any claims or causes of action held by any party against the Debtor, any "affiliate" (as such term is defined in the Bankruptcy Code) of the Debtor or any officer, director or direct or indirect equity owner (or affiliate thereof) of the Debtor; and

  (f) substantially all cash, securities or other property (and the proceeds therefrom) as of the Petition Date, including without limitation, all cash, securities or other property (and the proceeds, product and offspring therefrom) and other amounts on deposit or maintained by the Debtor in accounts pursuant to the Prepetition Secured Agreements were subject to rights of setoff and valid, perfected, enforceable, first priority liens under the Existing Facility Agreement and the other Prepetition Secured Agreements, and applicable law, for the benefit of the Prepetition Secured

Parties.   All proceeds of the Prepetition Collateral are Cash Collateral of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (collectively, the "**Cash Collateral**").

5.      <u>Need for Financing and Cash Collateral Use</u>.

(a)      The Debtor has an immediate need to obtain the DIP Loan Facility and to use the Prepetition Collateral, including any cash that constitutes Prepetition Collateral, in order to, among other things, permit the orderly continuation of the operation of their businesses, preserve the going concern value of the Debtor, pay the costs of administration of its estate and for the other purposes set forth in the DIP Documents.   The Debtor's use of the Prepetition Collateral (including the Cash Collateral) and the DIP Loan Facility on the terms described herein is necessary to prevent immediate and irreparable harm to the Debtor's estate.

(b)      The Debtor is unable to obtain financing on more favorable terms from sources other than the DIP Lenders pursuant to, and for the purposes set forth in, the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.   The Debtor is also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtor granting to the DIP Agent for the benefit of itself and the DIP Lenders, subject to the Carve-Out (as defined in paragraph 17 below), (i) the DIP Liens (as defined in paragraph 12(a) below), including the priming DIP Liens and (ii) the Superpriority DIP Claims (as defined in paragraph 13(a) below), in each case on the terms and conditions set forth in this Interim Order and the DIP Documents, as modified by this Interim Order.   No party

- 8 -

or parties other than the DIP Lenders would provide postpetition financing to the Debtor absent the Debtor granting such parties priming liens on the Debtor's assets pursuant to section 364(d)(1) of the Bankruptcy Code or other impracticable conditions, and the Debtor was unable to satisfy the requirements of section 364(d)(1) of the Bankruptcy Code.

6.    _Proposed DIP Loan Facility_.  The Debtor has requested the DIP Agent and DIP Lenders to establish the DIP Loan Facility pursuant to which the Debtor may from time to time obtain loans ("**DIP Loans**") in an aggregate principal amount of up to $9,000,000 outstanding at any time pursuant to the terms of the DIP Documents.  The DIP Agent and each DIP Lender is willing to establish the DIP Loan Facility, upon the terms and conditions set forth herein and in the DIP Documents.

7.    _Certain Conditions to DIP Loan Facility_.  The DIP Agent's and DIP Lenders' willingness to establish the DIP Loan Facility is conditioned upon, among other things: (a) the Debtor obtaining Court approval of the DIP Agreement (and all extensions of credit thereunder), as well as all of the other DIP Documents; (b) the Debtor's provision of adequate protection pursuant to sections 361 and 363 of the Bankruptcy Code of the interests of Prepetition Secured Parties with respect to the Prepetition Liens; (c) the DIP Agent and each DIP Lender receiving, as security for the payment of the DIP Obligations (as defined below), security interests in and liens upon the DIP Collateral (as defined below) and the DIP Documents; and (d) the Debtor's satisfaction of all conditions precedent in the DIP Agreement and DIP Documents, unless waived in writing by the Initial DIP Lenders in their sole discretion.

8.    _Finding of Cause_.  Good cause has been shown for the entry of this Interim Order and authorization for the Debtor to use Cash Collateral and to obtain extensions of

credit under the DIP Loan Facility (the "**DIP Credit Extensions**") pursuant to the terms of the DIP Documents, as modified by this Interim Order. The Debtor's need for use of Cash Collateral and financing of the type afforded by the DIP Agreement is ongoing, immediate and critical. Entry of this Interim Order will minimize disruption of the Debtor's businesses and operations, will preserve the assets of the Debtor's estate and their value and is in the best interests of the Debtor, its creditors and its estate. The terms of the proposed financing are fair and reasonable, reflect the Debtor's exercise of prudent business judgment and are supported by reasonably equivalent value and fair consideration.

9.    <u>Finding of Good Faith</u>.  Based upon the record presented at the Interim Hearing, the Court finds that the DIP Agreement and the other DIP Documents, as well as the terms of this Interim Order, have been negotiated in good faith and at arm's length between the Debtor, on the one hand, and the DIP Agent and DIP Lenders, on the other hand. Therefore, all DIP Credit Extensions heretofore and hereafter made to the Debtor pursuant to the DIP Documents shall be deemed to have been extended and made in good faith within the meaning of section 364(e) of the Bankruptcy Code.

10.    <u>Authorization of Interim Financing; Budget</u>.

(a)    The Court hereby authorizes (i) the execution, delivery and performance by Debtor of and under the DIP Agreement and other DIP Documents, as applicable, in substantially the form annexed to the Motion (with such changes, as were addressed to the Court at the Interim Hearing or are to be made as amendments to the DIP Agreement and other DIP Documents in accordance with this Interim Order) and all other instruments, security agreements, assignments, pledges, and other documents referred to therein or required by the DIP Agreement to be executed by the

Debtor; (ii) the Debtor to obtain DIP Loans and other DIP Credit Extensions in accordance with the DIP Documents from time to time up to an aggregate principal amount outstanding at any time prior to entry of the Final Order of up to $1,500,000 ("**Interim Financing**"), to be used by the Debtor in accordance with the DIP Documents and the Budget (as defined below), none of which Interim Financing shall be used to refinance $4,500,000 under the Existing Facility Agreement) (the "**Roll-Up**"), which Roll-Up shall be subject to approval by Final Order; and (iii) the Debtor to satisfy all conditions precedent and perform of all obligations hereunder and under the DIP Documents in accordance with the terms hereof and thereof; provided, however, that the authorization to use proceeds of DIP Loans shall be limited solely to the purposes specified and authorized in this Interim Order or the DIP Documents, as modified by this Interim Order (collectively, the "**Permitted Uses**"); and provided, further, that until the entry of the Final Order, the Debtor may obtain DIP Credit Extensions only to the extent necessary to avoid immediate and irreparable harm to the Debtor, which, for purposes hereof, shall include, without limitation, obligations and expenses specified in the Budget, the funding of DIP Loans used to pay the fees and expenses due and other amounts owing by Debtor at any time to the DIP Agent and DIP Lenders under the DIP Documents, and other expenses and obligations of the Debtor to the DIP Agent and DIP Lenders that are required to be paid prior to the Final Hearing under the DIP Documents, as modified by this Interim Order, or under any other order of the Court.

(b)     The DIP Agent and DIP Lenders shall not have any obligation or responsibility to monitor the Debtor's use of any DIP Loans, and may rely upon the

116499671v2

Debtor's representations that the amount of the DIP Credit Extensions requested at any time, and the use thereof, are in accordance with the requirements of this Interim Order and the DIP Documents.

(c)    The Debtor shall deliver to the DIP Agent, on a periodic basis as required under the DIP Loan Facility from and after the closing of the DIP Loan Facility, updates to the "Budget" (as defined in the DIP Agreement), acceptable to the DIP Agent and Initial DIP Lenders as and to the extent required by the DIP Agreement (such Budget, together with any updated Budgets acceptable to the DIP Agent and the Initial DIP Lenders, the "**Budget**"). All updates to the Budget shall be filed with the Court by the Debtor, and served by the Debtor on the U.S. Trustee counsel for the ad hoc committee of equity security holders (the "Ad Hoc Equity Committee") and counsel for any official committee(s) of unsecured creditors or equity security holders appointed in the case (collectively the "Committee(s)"), no later than three (3) days after the Debtor delivers the same to the DIP Agent.

11.    <u>Execution, Delivery and Performance of DIP Documents</u>. The Debtor is authorized to execute, deliver and perform under all the terms and conditions of each and every DIP Document, as modified by this Interim Order. The DIP Documents may be executed and delivered on behalf of the Debtor by any officer, director or agent of the Debtor who represents himself or herself to be duly authorized and empowered to execute the DIP Documents for and on behalf of the Debtor, and the DIP Agent and DIP Lenders may rely upon any of such person's execution and delivery of any of the DIP Documents as having done so with all requisite power and authority to do so. Upon the entry of this Interim Order, the DIP Documents shall constitute valid and binding obligations of the Debtor, enforceable against the Debtor in accordance with

- 12 -

their terms, <u>as modified by this Interim Order</u>. In furtherance of the provisions of this Interim Order, the Debtor is authorized to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, if applicable, the execution of the DIP Agreement, security agreements, pledge agreements, control agreements, mortgages, deeds of trust, deeds to secure debt, financing statements and intellectual property filings), and to pay all filing and recording fees as may be necessary or, in the opinion of the DIP Agent or any DIP Lender, are desirable to give effect to any of the terms and conditions of the DIP Documents or as otherwise required or contemplated by the DIP Documents.

12.     <u>DIP Collateral and DIP Liens</u>.

(a)     All "Obligations" under (and as defined in) the DIP Agreement, including, without limitation, all DIP Credit Extensions and all amounts owing (then existing, contingent or otherwise, all of the foregoing being collectively called the "**DIP Obligations**") shall be, and hereby are, secured, subject and subordinate only to the Carve-Out (as defined in paragraph 17 below), by perfected, first priority liens (collectively, the "**DIP Liens**") in favor of the DIP Agent and each DIP Lender on and in all of the Prepetition Collateral and all other assets of the Debtor in existence or created prior to, on or after the Petition Date, and subject to the entry of the Final Order, any proceeds or property recovered in connection with the successful prosecution or settlement of any claims pursuant to sections 502(d), 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code (collectively, the "**DIP Collateral**").

(b)     The DIP Liens with respect to the DIP Collateral shall have the following priorities:

i        <u>Unencumbered Collateral</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a first priority lien on and security interest in all DIP Collateral (including, without limitation, all real property) that is not subject to a valid and perfected lien existing on the Petition Date other than the DIP Collateral on which there are liens and security interests as described in clause (iii) below;

ii     <u>Encumbered Collateral</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a lien on and security interests in all DIP Collateral (including, without limitation, all real property) that is subject to a valid, perfected and unavoidable lien existing on the Petition Date to the extent such lien was senior to the Prepetition Liens on the Petition Date (a "Permitted Lien"), junior only to such Permitted Lien;

iii    <u>Extent of Priming DIP Lien</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a first priority, senior priming lien on and security interest in all Prepetition Collateral that is or was intended or required to be subject to valid and perfected liens existing on the Petition Date in favor of the Prepetition Secured Parties; and

iv    <u>Carve-Out</u>.  The DIP Liens shall be subject and subordinate in all respects to the Carve-Out in accordance with paragraph 17 of this Interim Order.

13.    <u>Superiority DIP Claim; Surcharge</u>.

(a)    <u>Scope of Superpriority DIP Claim</u>.  Subject to the Carve-Out in accordance with paragraph 17 of this Interim Order, and in addition to being secured as provided in this Interim Order and any Final Order, all DIP Obligations shall constitute an allowed administrative expense claim under section 503(b) of the Bankruptcy Code and shall constitute an allowed superpriority claim (the "**Superpriority DIP Claim**") pursuant to section 364(c)(1) of the Bankruptcy Code over all other administrative expenses in the Debtor's case of the kind specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c) (subject to the Final Order), 507(a), 507(b), 546(c), 726 or 1114 of the Bankruptcy Code.

116499671v2

Without limiting the generality of the foregoing, the Superpriority DIP Claim shall be superior to any and all administrative priority claims arising out of transactions, if any, arising between the Debtor and any subsidiary of a Debtor, and all such intercompany claims shall be subordinate to the Superpriority DIP Claim.

(b)    No Surcharge.    Subject to the Carve-Out in accordance with paragraph 17 of this Interim Order, it shall be an Event of Default under (and as defined in) the DIP Agreement for any costs or administrative expenses that have been or may be incurred in this chapter 11 case, in any matters or proceedings related hereto or in any superseding chapter 7 case, to be prior to or on a parity with the Superpriority DIP Claim of the DIP Agent and DIP Lenders for the DIP Obligations. Subject to entry of the Final Order, in no event shall any costs or expenses of administration be imposed upon the DIP Agent, any DIP Lender or any of the DIP Collateral pursuant to sections 105, 506(c) or 552(b) of the Bankruptcy Code, or otherwise, without the prior written consent of the DIP Agent and all DIP Lenders, and no such consent shall be implied from any action, inaction or acquiescence by the DIP Agent or any DIP Lender; and, subject to the entry of the Final Order, in no event shall any costs or expenses of administration be imposed upon the Prepetition Secured Parties or any Prepetition Collateral, whether pursuant to sections 105, 506(c) or 552(b) of the Bankruptcy Code, or otherwise, without the prior written consent of the Prepetition Secured Parties, and no such consent shall be implied from any action, inaction or acquiescence by the Prepetition Secured Parties.

14.    Debtor Reimbursement Claims.    The DIP Obligations shall be due and payable, and shall be paid, as and when provided in the DIP Documents and as provided herein,

- 15 -

without offset, counterclaim, deduction or other claim of avoidance of any nature or type. In no event shall the Debtor be authorized to offset, deduct, avoid or recoup any amounts owed, or alleged to be owed, by the DIP Agent, any DIP Lender or any Prepetition Secured Party to the Debtor against any of the DIP Obligations (including, without limitation, any such obligations owing under the Prepetition Secured Agreements), unless and to the extent expressly otherwise agreed to in writing by each of the DIP Agent, DIP Lenders and Prepetition Secured Parties, as applicable.

15.    _Cash Collateral; Other Matters_.  Subject to the terms of this Interim Order and the DIP Documents, the Debtor is authorized to use Cash Collateral that is secured by the DIP Liens or the Prepetition Liens in accordance with this Interim Order and the DIP Documents. The Debtor shall cause the Cash Collateral to be promptly deposited in one or more accounts as required by the DIP Documents, provided that all such accounts must meet the requirements of any order of this Court approving the Debtors' cash management system, which shall be subject to the DIP Liens. Prior to the deposit of such Cash Collateral, the Debtor shall be deemed to hold all such proceeds in trust for the benefit of the DIP Agent, the DIP Lenders and the Prepetition Secured Parties, as applicable. The DIP Agent and DIP Lenders may, subject to the provisions of the DIP Documents, apply (and reapply) any or all Cash Collateral at any time or times in its possession or control to the payment of any of the DIP Obligations, in such order of application as the DIP Agent or any DIP Lender may designate or elect, and may use all or part of the Cash Collateral to collateralize any contingent DIP Obligations. If after the repayment in full in cash ("**Full Payment**") of the DIP Obligations, any Challenge (as defined below), claim or cause of action is asserted against the DIP Agent or any DIP Lender or any Prepetition Secured Parties, then such parties shall be entitled to payment from the Debtor to the

- 16 -

extent of all costs, expenses, liabilities or damages incurred by it or them (including, without limitation, reasonable attorneys' fees), as secured creditors pursuant to the terms of the DIP Documents and Existing Facility Agreement, all as more fully set forth in the Final Order.

16.   Adequate Protection of Prepetition Secured Parties.   As adequate protection pursuant to sections 361 and 363 of the Bankruptcy Code for the Debtor's use, consumption, sale, collection or other disposition of any of the Prepetition Collateral, the Prepetition Secured Parties shall receive the following as adequate protection:

(a)   to the extent there is a diminution in the value of the interests of the Prepetition Secured Parties in the Prepetition Collateral ~~(whether the reason for such diminution~~ which is as a result of or from, arises from, or is attributable to, the imposition of the automatic stay, or the ~~(the priming of the Prepetition Liens, the use of Cash Collateral or the physical deterioration, consumption,~~ use, sale, or lease, disposition, ~~shrinkage or decline in market value of the Prepetition Collateral~~) or grant of ~~such~~ a lien under Section 364 of the Bankruptcy Code) ↓ of Pre-Petition Collateral), the Prepetition Secured Parties are granted replacement liens on the Prepetition Collateral (the "**Replacement Liens**"), which liens are valid, binding, enforceable and fully perfected as of the date hereof, but are subject to the Carve-Out and the limitations contained in paragraph 24 of this Interim Order;

(b)   an allowed administrative claim (the "**Credit Facility Administrative Claim**") against the Debtor's estate under section 507(b) of the Bankruptcy Code to the extent that the Replacement Liens do not adequately protect the diminution in the value of the interests of the Prepetition Secured Parties in the Prepetition Collateral, which Credit Facility Administrative Claim, if any, shall be junior and subordinate to

- 17 -

the Carve-Out and the Superpriority DIP Claim and shall be subject to the limitations
contained in paragraph 24 of this Interim Order; and

(c)    payment of fees and expenses of the Prepetition Secured Parties to the
extent incurred prior to, on or after the Petition Date; provided, however, that no
written objection is received by counsel for the Prepetition Secured Parties from the
U.S. Trustee, the Ad Hoc Equity Committee or Committee(s) within ten (10) days
(the "**Review Period**") after receipt by the U.S. Trustee and counsel to the Ad Hoc
Equity Committee, and counsel to the Committee(s) of invoices thereof (subject in all
respects to applicable privilege and work product doctrines) and such objector files a
motion with the Court within three (3) business days thereafter seeking a hearing on
such objection on the first omnibus hearing date on which such hearing can be held;
provided further that the U.S. Trustee's right to object to such fees on any basis is
hereby preserved.  If an objection is received as to any portion of such invoice and a
motion seeking a hearing thereon is timely filed, the Debtor shall promptly pay after
the Review Period the portion of such invoice not subject to objection and shall not
pay the fees or expenses objected to except upon a consensual resolution of such
objection or resolution of such motion by the Bankruptcy Court.

17.    Payment of Certain Fees and Expenses and the Carve-Out.

(a)    Payment of Certain Fees and Professional Expenses.    The Debtor is
authorized to use proceeds of DIP Loans solely for the uses permitted under the DIP
Agreement, including, without limitation, (i) to pay any fees required to be paid to the
Clerk of the Court; (ii) to pay the statutory fees payable to the U.S. Trustee pursuant
to 28 U.S.C. § 1930(a)(6), together with the statutory rate  of interest pursuant to 31

U.S.C. § 3717 (collectively "**U.S. Trustee Fees**"); and (iii) to pay the fees and disbursements incurred by a chapter 7 trustee (if any) under section 726(b) of the Bankruptcy Code in an amount not to exceed $25,000. In addition, subject to the Budget,[2] for so long as no Event of Default under (and as defined in) the DIP Agreement shall have occurred and be continuing, the Debtor is also authorized to use the proceeds of the DIP Loans, without limitation, to pay fees, compensation, costs, expenses and disbursements (collectively, "**Professional Expenses**") of professionals (including, without limitation, attorneys, accountants, appraisers, consultants and investment bankers) retained by the Debtor (the "**Debtor Professionals**") or retained by Committee(s), if any, appointed in this chapter 11 case (any such official committee(s) being referred to as a "**Committee**," and such professionals, the "Committee Professionals"), all in accordance with and subject to the Budget;[3] provided, however, that, except as provided in the final sentence of this paragraph no proceeds of DIP Loans or any Cash Collateral of the DIP Agent or Prepetition Secured Parties shall be used to pay Professional Expenses of the Debtor's Professionals or Committee Professionals (collectively, the "**Professional Persons**") or any other costs incurred in connection with (i) commencing or continuing any claims, causes of actions, adversary proceedings or contested matters against any

---

[2]    Notwithstanding any reference in the Budget to "KEIP," "KERP," or any other type of bonus or severance payment, nothing in this Interim Order authorizes the payment of any amount of bonus or severance obligations, or any other obligation which is subject to section 503(c) of the Bankruptcy Code.

[3]    Nothing herein permits the payment of any Professional Expense of the Debtor's Professionals or Committee Professionals except to the extent such fees and expenses are approved by Court order, after the filing of a fee application on notice, or as otherwise permitted pursuant to the procedures set forth in any interim compensation order entered by this Court.

116499671v2

Prepetition Secured Party, the DIP Agent or any DIP Lender with respect to any loan, repayment or other transaction, act or inaction under or in connection with the Prepetition Secured Agreements or DIP Documents (as the case may be), including, without limitation, discovery proceedings subsequent to the commencement of any such claims or causes of action; (ii) preventing, hindering or delaying performance or enforcement by any Prepetition Secured Party, the DIP Agent or any DIP Lender of its rights or remedies under this Interim Order or any of the DIP Documents (except to contest whether an Event of Default has occurred and exists under the DIP Agreement); (iii) challenging any liens granted in connection with the Prepetition Secured Agreements, the DIP Liens or the Superpriority DIP Claim; (iv) challenging the DIP Obligations or the Prepetition Secured Obligations; or (v) that would otherwise be expenses not permitted pursuant to the Budget.  Notwithstanding the foregoing limitations up to $10,000 may be used by the Committee solely to investigate claims, causes of action or adversary proceedings against the Prepetition Secured Parties with respect to the Prepetition Liens granted to such persons on Prepetition Collateral.

(b)      Carve-Out.  All liens and claims granted pursuant to this Interim Order shall be subject and subordinate to the Carve-Out.   For the purposes of this Interim Order, the "**Carve-Out**" shall mean:    (i) Professional Expenses incurred by Professional Persons at any time, whether or not then allowed or paid (but subject to ultimate allowance), whether by this Interim Order, procedural order, or otherwise, but only to the extent all such Professional Expenses set forth in this clause do not exceed the amount permitted through such time for such expenses in the Budget as

then applicable; provided, however, that upon the occurrence of an Event of Default, the Professional Expenses incurred by Professional Persons thereafter may not exceed $50,000; (ii) all fees required to be paid to the Clerk of the Court; (iii) all U.S. Trustee Fees; and (iv) all reasonable fees and expenses incurred by a chapter 7 trustee under section 726(b) of the Bankruptcy Code in an aggregate amount not exceeding $25,000 out of the DIP Collateral; provided, however, that nothing herein shall be construed to impair the ability of any interested party to object to any Professional Expenses sought by any Professional Person.

18.    Preservation of Rights Granted Under this Interim Order.

(a)    Protection From Subsequent Financing Order.  It shall constitute an Event of Default under (and as defined in) the DIP Agreement if the Debtor seeks, or if there is entered in this chapter 11 case, or in any successor case, any order that authorizes the obtaining of credit or the incurrence of indebtedness by the Debtor (or any trustee or examiner) that (i) is secured by a security, mortgage, collateral interest or lien on all or any part of the DIP Collateral that is equal or senior to the DIP Liens or Credit Facility Replacement Liens, except as expressly authorized by the DIP Agreement, or (ii) has priority administrative status that is equal or senior to the Superpriority DIP Claim; provided, however, that nothing herein shall prevent the entry of an order that specifically provides that, as a condition to the granting of the benefits of clauses (i) or (ii) above, all of the DIP Obligations and Prepetition Secured Obligations must be fully paid from the proceeds of such credit or indebtedness, and all contingent obligations owed to any DIP Lender or any Prepetition Secured Party

116499671v2

fully cash collateralized as provided in the DIP Documents or Prepetition Secured Agreements (as applicable).

(b)    <u>Rights Upon Dismissal, Conversion or Consolidation</u>.    If the Case is dismissed, converted to a case under chapter 7 of the Bankruptcy Code or substantively consolidated with another case, then (i) neither the entry of this Interim Order nor the dismissal, conversion or substantive consolidation of the Case shall affect the rights or remedies of the DIP Agent and DIP Lenders under the DIP Documents or the rights or remedies of Prepetition Secured Parties or the DIP Agent or DIP Lenders under this Interim Order, and (ii) all of the respective rights and remedies hereunder and thereunder of Prepetition Secured Parties, the DIP Agent and DIP Lenders shall remain in full force and effect as if the Case had not been dismissed, converted, or substantively consolidated.    It shall constitute an Event of Default if the Debtor seeks, or if there is entered, any order dismissing the Case. Notwithstanding any order that may be entered in the future dismissing the Case (i) all of the liens and claims granted hereunder shall continue in full force and effect and shall maintain their priorities as provided in this Interim Order (and that such liens and claims shall, notwithstanding such dismissal, remain binding on all interested parties) and (ii) to the extent allowed by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purpose of enforcing all the liens and claims of the Prepetition Secured Parties, the DIP Agent and the DIP Lenders to the greatest extent permitted by applicable law.

(c)    <u>No Discharge; Credit Bid Rights</u>.    Unless and until Full Payment of the DIP Obligations shall occur or are otherwise satisfied with the consent of the DIP

- 22 -

Lenders in their sole discretion, all such obligations shall not be discharged by the entry of any order confirming a plan of reorganization in the Case and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor has waived such discharge. The Debtor's filing of any plan of reorganization or liquidation that limits or otherwise restrict the right of the DIP Agent or any DIP Lender, or any Prepetition Secured Party to submit a credit bid for all or any part of the DIP Collateral (including a joint credit bid by one or more the Prepetition Secured Parties, DIP Agent and/or DIP Lenders) constitutes an event of default under the DIP Documents. Subject to entry of the Final Order, no order entered in connection with a sale of assets under section 363 of the Bankruptcy Code or otherwise, shall limit or otherwise restrict the right of the DIP Agent or any DIP Lender, or any Prepetition Secured Party to submit a credit bid for all or any part of the DIP Collateral (including a joint credit bid by one or more the Prepetition Secured Parties, DIP Agent and/or DIP Lenders).

(d)     No Marshaling.  The Debtor agrees not to assert rights pursuant to the equitable doctrine of "marshaling" or any similar doctrine with respect to any DIP Collateral at any time securing any of the DIP Obligations, and, subject to entry of the Final Order, in no event shall any DIP Liens be subject to any pre-petition or post-petition lien or security interest that is avoided and preserved for the benefit of the Debtor's estate pursuant to section 551 of the Bankruptcy Code.

(e)     No Requirement to File Proof of Claim.  Notwithstanding anything to the contrary contained in any prior or subsequent order of the Court, including, without limitation, any bar order establishing a deadline for the filing of proofs of

116499671v2

claims entitled to administrative expense treatment under section 503(b) of the Bankruptcy Code, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall not be required to file any proof of claim with respect to any of the DIP Obligations or the Prepetition Secured Obligations, all of which shall be due and payable in accordance with the DIP Documents and the Prepetition Secured Agreements, as applicable, without the necessity of filing any such proof of claim, and the failure to file any such proof of claim shall not affect the validity or enforceability of any of the DIP Documents or the Existing Facility Agreement, as applicable, or prejudice or otherwise adversely affect the DIP Agent's, any DIP Lender's or any Prepetition Secured Parties' rights, remedies, powers or privileges under the DIP Documents, the Existing Facility Agreement or this Interim Order.

(f)    <u>Reservation of Rights</u>.  The terms, conditions and provisions of this Interim Order are in addition to, and, except as expressly provided herein, without prejudice to the rights of, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties to pursue any and all rights and remedies available to them under the Bankruptcy Code, the Existing Facility Agreement and the DIP Documents, as modified by this Interim Order, or any other applicable agreement or law including, without limitation, the right to seek adequate protection and/or additional or differing adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or the granting of any interest in the DIP Collateral or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of Professional Persons, or other parties seeking compensation in the chapter 11 case.

19.    <u>Automatic Perfection of Liens</u>.  The DIP Liens and Replacement Liens (collectively, the "**DIP Order Liens**") shall, as of the Petition Date, be deemed valid, binding, enforceable and perfected with respect to all of the DIP Collateral or Prepetition Collateral, as applicable, upon entry of this Interim Order.  The DIP Agent, DIP Lenders, and the Prepetition Secured Parties, shall not be required to file any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien or any similar document or take any other action (including, without limitation, possession of any of the DIP Collateral or any other property of the Debtor or the obtaining of any consent of any third party including, without limitation, any third party to a control or similar agreement under the Existing Facility Agreement) in order to validate the perfection of any DIP Order Liens.  If the DIP Agent, any DIP Lender, or any Prepetition Secured Party chooses to file or record any such mortgages, deeds of trust, security deeds, notices of lien or UCC-1 financing statements, or take any other action to validate the perfection of any DIP Order Liens, the Debtor and its officers are authorized to execute any documents or instruments as the DIP Agent, any DIP Lender or the Prepetition Secured Parties, shall reasonably request, and the Debtor shall pay or reimburse the DIP Agent, each DIP Lender, and each of the Prepetition Secured Parties (as applicable) for the payment of any cost, fees or expenses (including, without limitation, recording taxes) payable in connection with the filing or recordation of any UCC-1 financing statements, mortgages, deeds of trust, security deeds, notices of lien or other instruments or agreements.  The DIP Agent, each DIP Lender and Prepetition Secured Parties, may, in its or their discretion, file a certified copy of this Interim Order in any filing office in any jurisdiction in which the Debtor is organized or has or maintains any DIP Collateral or an office, and each filing office is authorized to accept such certified copy of this Interim Order for filing and recording.

- 25 -

20.    <u>Reimbursement of Expenses</u>.  All reasonable and documented costs and expenses incurred by the DIP Agent and any DIP Lenders for which the Debtor is obligated under the DIP Documents, shall form a part of the DIP Obligations and shall be paid by the Debtor (without the necessity of filing any application with or obtaining further order from the Court) in accordance with the terms of the DIP Documents, provided that (i) no written objection is received by counsel for the DIP Lenders from the U.S. Trustee, counsel to the Ad Hoc Equity Committee or counsel to the Committee(s) within ten (10) days (the **"Review Period"**) after receipt by the U.S. Trustee, counsel to the Ad Hoc Equity Committee, and counsel to the Committee(s) of invoices thereof (subject in all respects to applicable privilege and work product doctrines) and (ii) such objector files a motion with the Court within three (3) business days thereafter seeking a hearing on such objection on the first omnibus hearing date on which such hearing can be held.  If an objection is received as to any portion of such invoice and a motion seeking a hearing thereon is timely filed, the Debtor shall promptly pay after the Review Period the portion of such invoice not subject to objection and shall not pay the costs or expenses objected to except upon a consensual resolution of such objection or resolution of such motion by the Bankruptcy Court.

21.    <u>Amendments to DIP Documents</u>.  The Debtor and the DIP Agent and DIP Lenders are hereby authorized to execute, deliver and implement, in accordance with the terms of the DIP Documents and without further order of the Court, any amendments to and modifications of any of the DIP Documents on the following conditions:  (a) the amendment or modification must not constitute a material change to the terms of the DIP Documents, (b) copies of the amendment or modification must be served upon counsel for the Ad Hoc Equity Committee, counsel for the Committee(s), if any, the U.S. Trustee and other interested parties

- 26 -

specifically requesting such notice, and (c) notice of the amendment is filed by the Debtor with the Court within two (2) business days after the execution of such amendment or modification. Any amendment or modification that constitutes a material change, to be effective, must be approved by the Court.  For purposes hereof, a "material change" shall mean a change that operates to shorten the maturity date of the DIP Loan Facility, increase the aggregate amount of the commitment for DIP Loans under the DIP Loan Facility, increase the rate of interest other than as provided in or contemplated by the DIP Documents, add additional specific events of default, or enlarge the nature and extent of default remedies available to the DIP Agent or any DIP Lender following an Event of Default under (and as defined in) the DIP Agreement, or any other change that is materially adverse to the Debtor.  Without limiting the foregoing, any other change that does not materially and adversely affect the rights of the Debtor under the DIP Loan Facility shall not constitute a material change to the terms of the DIP Documents and may be affected by the Debtor and the DIP Lenders without the need for further approval of the Court, as long as the procedures set forth in (b) and (c) of this paragraph are followed.

      22.    <u>Events of Default; Remedies</u>.

      (a)    <u>Events of Default and Remedies</u>.  An Event of Default shall be deemed to have occurred and exist for purposes of this Interim Order upon the occurrence of an "Event of Default" under (and as defined in) the DIP Agreement, including, without limitation, any breach or failure of compliance by the Debtor with respect to any of the provisions of this Interim Order.

      (b)    <u>Enforcement of Remedies</u>.  Upon or after the occurrence of any Event of Default, the DIP Agent and, as applicable, each DIP Lender shall be fully authorized, in its sole discretion, to exercise all remedies available to it under the DIP

Documents and applicable law, _provided_ that the DIP Agent shall provide (i) five (5) days' notice to the Debtor's counsel (with a copy to counsel  for the Ad Hoc Equity Committee, counsel to the Committee(s) , if any, and the U.S. Trustee) prior to the termination of the Debtor' right to use Cash Collateral, and (ii) seven (7) days' notice to the Debtor's counsel (with a copy to counsel for the Ad Hoc Equity Committee, counsel to the Committee(s), if any, and the U.S. Trustee) prior to the enforcement of the DIP Liens or exercise of any other rights or remedies against the DIP Collateral. The foregoing notices shall be served via electronic mail or facsimile on the Debtors' counsel, counsel to the Committee and the Office of the U.S. Trustee.  The foregoing notice provisions are without prejudice to the rights of the DIP Agent and the DIP Lenders, as applicable, to seek earlier relief from this Court upon appropriate notice and hearing pursuant to the Bankruptcy Code and Bankruptcy Rules.  In any hearing regarding the exercise of remedies, unless otherwise ordered by the Court, the sole and exclusive issue shall be whether or not an Event of Default has occurred and is continuing under any of the DIP Documents.  Upon or after the occurrence of an Event of Default, and notwithstanding the notice periods referred to above, none of the DIP Agent or any DIP Lender shall be obligated to make any DIP Credit Extensions to any of the Debtor.  The automatic stay provisions of section 362 of the Bankruptcy Code are modified to the extent necessary to implement the provisions of this paragraph.  Additionally, injunctive or other similar provisions contained in any plan of reorganization or any order confirming any such plan or plans of reorganization, shall not preclude the Prepetition Secured Parties, the DIP Agent or

116499671v2

any DIP Lender from exercising the rights and remedies provided to it pursuant to and in accordance with this Interim Order, the Final Order and the DIP Documents.

(c)   Application of DIP Collateral Proceeds.  Notwithstanding any contrary provision contained in this Interim Order, if the DIP Agent or any DIP Lender, or Prepetition Secured Parties shall proceed to enforce the DIP Liens or any other liens or claims granted to them in respect of any DIP Collateral, then the DIP Agent or any DIP Lender or Prepetition Secured Party may, in its discretion, elect to apply all proceeds of the DIP Collateral or Prepetition Collateral, as applicable, to the payment or cash collateralization of the DIP Obligations or the Prepetition Secured Obligations, as the case may be, then outstanding, if any, in such order of application as the DIP Agent or Prepetition Secured Party, as applicable, may elect in its discretion, and any application to the Prepetition Secured Obligations shall not be deemed to reduce the amount of the DIP Obligations.

(d)   Rights Cumulative.  The rights, remedies, powers and privileges conferred upon the Prepetition Secured Parties, the DIP Agent and the DIP Lenders pursuant to this Interim Order shall be in addition to, and cumulative with, those contained in the DIP Documents and Existing Facility Agreement, as applicable.

23.   Modification of Automatic Stay.  The automatic stay provisions of section 362 of the Bankruptcy Code are modified to the extent necessary to implement the provisions of this Interim Order and the DIP Documents, thereby permitting (a) the DIP Agent and the DIP Lenders, *inter alia*, to receive collections of DIP Collateral for application to the DIP Obligations as provided herein, (b) the DIP Agent to file or record any UCC-1 financing statements, mortgages, deeds of trust, security deeds and other instruments and documents

116499671v2

evidencing or validating the perfection of the DIP Liens and (c) the DIP Agent and any DIP Lender, as applicable, to enforce the DIP Liens and exercise any of its or their rights and remedies as set forth in paragraph 22 of this Interim Order and the DIP Documents, all without further order modifying or terminating the automatic stay of section 362 of the Bankruptcy Code.

24.     Deadline for Challenge to Prepetition Secured Obligations.     In consideration of the DIP Agent's and the DIP Lenders' agreement to provide DIP Credit Extensions pursuant to the DIP Documents, and the Prepetition Secured Parties' consent to the use of Cash Collateral and to the DIP Liens, the Debtor has voluntarily made the stipulations and releases contained in paragraph 4 above (the **"Debtor's Stipulations"**).   The Debtor's Stipulations shall be binding on the Debtor, but shall be subject only to the right of a party-in-interest, including the Committee(s) and any chapter 11 trustee or chapter 7 trustee that is appointed prior to the expiration of the Challenge Deadline (as defined below), to the extent that such party has or is otherwise granted standing to do so, to commence an appropriate adversary proceeding (a **"Challenge"**) objecting to the validity, priority, amount or allowance of any Prepetition Secured Obligations, or the extent, validity, priority, perfection or avoidability of any liens granted to the Prepetition Secured Parties on the Prepetition Collateral, or seeking disgorgement of, recharacterization or subordination of, or offset or recoupment, against all or part of the payment of Prepetition Secured Obligations by a Debtor, the Roll-Up, or asserting any claim under contract, tort or other theory (including, without limitation, lender liability), including, without limitation, theories of recovery or pursuant to section 105 or chapter 5 of the Bankruptcy Code, which adversary proceeding or contested matter must be filed no later than (a) seventy-five (75) days from the entry of this Interim Order for any party in interest other than the Committee and (b) sixty (60) days from the formation of the first official committee ~~for such~~

Committee (the "**Challenge Deadline**"); provided, however, that if a chapter 7 trustee or chapter 11 trustee is appointed prior to the Challenge Deadline, the Challenge Deadline applicable to such trustee shall extend until the later of (i) sixty (60) days from such appointment and (ii) the existing Challenge Deadline.  If the party-in-interest has not obtained an order from the Court granting such party standing to pursue any such Challenge, then such party shall be required promptly following the commencement of any such challenge to seek such an order as a condition to its further prosecution of such Challenge, subject to any objection by the Debtor, the Prepetition Secured Parties, or any other interested party, and a party's authority to prosecute such Challenge shall be contingent upon its obtaining such an order granting standing.  In no event shall the filing of any such Challenge affect any of the rights, privileges, powers or remedies of the Debtor, the Prepetition Secured Parties, the DIP Agent or any DIP Lender under this Interim Order, the DIP Documents, or the Prepetition Secured Agreements.  If such Challenge is not timely filed (or, if filed, is denied or overruled), or if standing in connection with any such Challenge is not granted, (i) with respect to any Prepetition Secured Obligations, all of such Prepetition Secured Obligations shall be deemed a legal, valid, binding and enforceable claim that is allowed in full as a secured claim, and not subject to subordination or recharacterization in this Case, including any superseding chapter 7 case, or in any other proceedings; (ii) with respect to any liens granted to secure the Prepetition Secured Obligations, such Prepetition Liens shall be deemed to be legal, valid, binding, enforceable, perfected (having the priority set forth in this Interim Order) and unavoidable in this Case, including any superseding chapter 7 case, and in any other proceedings; and (iii) all claims and other causes of action (including, without limitation, "lender liability" theories) and causes of action or theories of recovery pursuant to section 105 or chapter 5 of the Bankruptcy Code) against Prepetition

Secured Parties shall be forever waived and barred.  For the avoidance of doubt, any chapter 7 trustee or chapter 11 trustee appointed or elected prior to the Challenge Deadline, or during the pendency of any adversary proceeding or contested matter commenced by the Committee(s) or any other party in interest to this paragraph 24, shall be deemed to be a party other than the Debtor and shall not, for purposes of such adversary proceeding or contested matter, be bound by the acknowledgments, admissions, confirmations, stipulations, releases and waivers of the Debtor in this Order.  If this Case is converted to a case under chapter 7 of the Bankruptcy Code, the trustee shall be permitted to continue prosecution of any pending adversary proceeding or contested matter theretofore commenced pursuant to this paragraph 24 on behalf of Debtor's estate.  If a challenge to the Prepetition Liens is successful, the Prepetition Secured Parties shall disgorge such portion of any adequate protection payments received under this Interim Order as the Court may order, and adequate protection claims and liens granted under this Interim Order shall be null and void to the extent the Court may order.

25.    <u>Service of Order</u>.  Promptly after the entry of this Interim Order, the Debtor shall mail, by January 29, 2016, a copy of this Interim Order, to:  (a) the Office of the U.S. Trustee; (b) counsel Deerfield Management Company, L.P.; (c) each of the Debtor's twenty (20) largest unsecured creditors; (d) any known holders of prepetition liens on the Prepetition Collateral; (e) the Securities and Exchange Commission; (f) the Internal Revenue Service; (g) all state taxing authorities in the states in which the Debtor does business; (h) the U.S. Food and Drug Administration; (i) the Center for Medicare & Medicaid Services; (j) any other federal or state regulatory authorities governing the Debtor's industry; (k) the U.S. Attorney's Office; (l) the Delaware Attorney General; (m) all parties (if any) who have filed requests for notices under Rule 2002 of the Bankruptcy Rules as of the date hereof, and ( n) any such other party entitled to

notice pursuant to Rule 9013-1(m) of the Local Rules, and shall file a certificate of service regarding same with the Clerk of the Court. Such service shall constitute good and sufficient notice of the Final Hearing.

26.    No Deemed Control. Subject to entry of the Final Order, by consenting to this Interim Order, making DIP Credit Extensions to the Debtor and administering the financing relationship with the Debtor pursuant to the DIP Documents, neither the DIP Agent nor any DIP Lender shall, solely by reason thereof, be deemed to be in control of the Debtor or the Debtor's operations, or to be acting as a "responsible person," "managing agent" or "owner or operator" (as such terms are defined in the United States Comprehensive Environmental Response, Compensation and Liability Act, as amended, or any similar state or federal statute) with respect to the operations or management of the Debtor.

27.    Binding Effect; Successors and Assigns. Immediately upon entry of this Interim Order by the Court (notwithstanding any applicable law or rule to the contrary), the provisions of this Interim Order shall be binding upon and inure to the benefit of all parties in interest in this Case, including, without limitation, the DIP Agent, each DIP Lender, the Prepetition Secured Parties, the Debtor, and their respective successors and assigns (including, without limitation, any chapter 11 trustee hereafter appointed or elected for the estate the Debtor, or any chapter 7 trustee appointed in any superseding chapter 7 case); provided, however that neither the DIP Agent nor any DIP Lender shall have any obligation to make DIP Credit Extensions to, or consent to the use of Cash Collateral by, any chapter 7 or chapter 11 trustee appointed or elected for the estate of the Debtor.

28.    <u>Order Controls</u>.  In the event of any irreconcilable inconsistency between the terms of the DIP Documents and this Interim Order, the provisions of this Interim Order shall govern and control.

29.    <u>Final Hearing</u>.  The Final Hearing on the Motion shall be held at 9:30 a.m., Eastern Standard Time, on February 22, 2016, 5th Floor at Courtroom 4, before Judge Walrath, at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, Wilmington, Delaware 19801.

30.    <u>Objection Deadline</u>.  If any party in interest shall have an objection to any of the provisions of this Interim Order, such party shall be authorized to assert such objection at the Final Hearing, provided that a written statement setting forth the basis for such objection is filed with the Court, and concurrently served upon:  (a) the Office of the United States Trustee, 844 King Street, Suite 2207, Lockbox #35, Wilmington, Delaware, 19899-0035, Attention: Juliet Sarkessian; (b) counsel for the Debtor, Dentons US LLP, 1301 K Street, NW, Suite 600, East Tower, Washington, DC 20005-3364, Attention: Sam J. Alberts, Esq., and Ashby & Geddes, P.A., 500 Delaware Avenue, P.O. Box 1150, Wilmington, DE 19899, Attention: William Bowden, Esq.; and (c) counsel for the DIP Agent, DIP Lenders and Prepetition Secured Parties, Katten Muchin Rosenman LLP, 575 Madison Avenue, New York, New York 10022, Attention: Jeff J. Friedman, Esq., and Connolly Gallagher LLP, The Brandywine Building, 1000 West Street, Suite 1400, Wilmington, DE 19801, Attention:  Jeffrey C. Wisler, Esq.; so that such objections and responses are filed on or before 12:00 p.m., Eastern Standard Time on February 16, 2016.  Any objecting party should appear at the Final Hearing to assert the basis for such objection before the Court or the Court may deem such objection to have been waived and abandoned by such objecting party.

116499671v2

31.     Effect of Modification, Vacatur or Stay of Interim Order.  If any or all of the provisions of this Interim Order are modified, vacated or stayed as the result of any objection timely filed and asserted at the Final Hearing, then, without limiting the provisions of paragraph 31 hereof, any DIP Obligations incurred prior to the effective date of such modification, vacatur or stay shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent and each DIP Lender shall be entitled to the protections afforded under section 364(e) of the Bankruptcy Code and to all the rights, remedies, privileges, and benefits, including, without limitation, the DIP Liens and Superpriority DIP Claim granted herein and with respect to all such DIP Obligations.

32.     Effect of Appeal.  Consistent with section 364(e) of the Bankruptcy Code, if any or all of the provisions of this Interim Order are hereafter modified, vacated or stayed on appeal:

(a)     such stay, modification or vacation shall not affect the validity of any obligation, indebtedness, liability or DIP Liens granted, created or incurred by the Debtor to the DIP Agent and DIP Lenders prior to the effective date of such stay, modification or vacation, or the validity, enforceability or priority of any DIP Liens, priority or right authorized or created under the original provisions of this Interim Order or pursuant to the DIP Documents; and

(b)     any indebtedness, obligation or liability incurred by the Debtor to the DIP Agent and the DIP Lenders under the DIP Documents prior to the effective date of such stay, modification or vacation shall be governed in all respects by the original provisions of this Interim Order, and the DIP Agent and the DIP Lenders shall be entitled to all the rights, remedies, privileges and benefits, including, without

- 35 -

limitation, the DIP Liens and priorities granted herein and pursuant to the DIP
Documents, with respect to any such indebtedness, obligation or liability. All DIP
Credit Extensions under the DIP Documents are made in reliance upon this Interim
Order, and, therefore, the indebtedness resulting from such DIP Credit Extensions
prior to the effective date of any stay, modification or vacation of this Interim Order
cannot (i) be subordinated, (ii) lose the priority of the DIP Liens, or (iii) be deprived
of the benefit of the Superpriority DIP Claim granted to the DIP Agent and DIP
Lenders under this Interim Order or the DIP Documents, as a result of any subsequent
order in this Case, or any superseding case, of the Debtor.

33.    <u>Effectiveness</u>.  This Interim Order shall take effect and be enforceable
immediately upon entry hereof notwithstanding any contrary Bankruptcy Rule or Rule of Civil
Procedure and there shall be no stay of execution or effectiveness of this Interim Order.

34.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to
enforce this Interim Order according to its terms.

Wilmington, Delaware
Date: January 28, 2016

                                       United States Bankruptcy Judge