# Exhibit A

(Engagement Letter)

CONFIDENTIAL

December 28, 2015

Board of Directors
Nuo Therapeutics, Inc.
207A Perry Parkway Suite 1
Gaithersburg, MD 20877
Attention:    Mr. David Jorden
                Director and Chief Financial Officer

Dear Mr. Jorden:

       This letter agreement (this "Agreement") confirms the terms of the engagement of Gordian Group, LLC ("Gordian") by Nuo Therapeutics, Inc. (the "Company" and, together with its affiliates, the "Companies") as the Company's exclusive investment banker as of the date hereof to provide certain financial advisory and investment banking services to the Company as specifically set forth below in connection with, in one or a series of transactions (each, a "Financial Transaction"): (i) raising new or replacement debt or equity capital (or other investment or financing) for any of the Companies, (ii) a restructuring, amendment, extension, conversion, exchange, credit bid, compromise, repayment, retirement, assumption, refinancing or other modification or satisfaction of any of the Companies' indebtedness (contingent or otherwise) or a portion of any of the Companies' obligations, (iii) any other restructuring, reorganization, or recapitalization of any of the Companies or their securities (including any repurchases), (iv) any merger, consolidation, joint venture or other business combination involving, or sale of substantially all or a portion of the assets or outstanding securities of, any of the Companies, and/or (v) the acquisition of substantially all or a portion of the assets or outstanding securities of another entity.

      1. <u>Services to be Rendered</u>. Gordian will perform such of the following financial advisory and investment banking services as the Company may reasonably request from time to time:

    a)  Advise and assist the Company with the general formulation and evaluation of various options for effecting one or more possible Financial Transactions;

    b)  Advise and assist the Company regarding any potential restructuring, amendment, extension, conversion, exchange, compromise, repayment, retirement, assumption, refinancing or other modification or satisfaction of the Companies' indebtedness and/or obligations;

    c)  Advise and assist the Company in raising new or replacement debt or equity capital (or other investment or financing) for the Companies, including identifying and, to the extent agreed by the Company, contacting potential parties to any such investment or financing;

    d) Advise and assist the Company regarding any potential merger or sale of any of the Companies or their securities, assets or businesses, including identifying and, to the extent agreed by the Company, contacting potential parties for any such merger or sale;

    e) Assist in preparing, for review and approval by the Company, proposals to creditors, equity holders and other parties-in-interest in connection with any possible Financial Transaction;

    f) Assist with the structuring and implementation of any Financial Transaction, including evaluating proposals from, and participating in negotiations with, third parties regarding such Financial Transaction;

    g) Assist with making presentations to the Company's Board of Directors regarding any potential Financial Transaction, its participating parties and/or other financial issues related thereto;

    h) Provide testimony to any bankruptcy court, as appropriate and mutually agreed upon by Gordian and the Company; and

    i) Render such other financial advisory and investment banking services as may be mutually agreed upon by Gordian and the Company.

For the avoidance of doubt, Gordian's services hereunder do not include the rendering of any valuation, fairness or solvency opinions (except in connection with any testimony to a bankruptcy court concerning a proposed Financial Transaction, as appropriate and mutually agreed upon by Gordian and the Company); any such services shall be addressed in a separate engagement letter as may be agreed to by the Company and Gordian.

    2. Inquiries. In the event any of the Companies or their respective managements receive or initiate an inquiry or other contact concerning a possible Financial Transaction, the Company shall promptly inform Gordian of such inquiry or contact with such prospective interested party, in order that Gordian can, if requested by the Company, assist the Company in any resulting negotiations in such manner as directed by the Company.

    3. Bankruptcy Filings. In the event any one or more of the Companies becomes a debtor under a Chapter 7 and/or Chapter 11 proceeding under title 11 of the United States Code (the "Bankruptcy Code"), the Company shall use its reasonable best efforts to provide for the continued retention and payment of Gordian, including, but not limited to, using it's reasonable best efforts to obtain or cause to be obtained from the applicable bankruptcy court, if and as appropriate, prompt authorization of the retention of Gordian pursuant to Sections 327(a) and 328 of the Bankruptcy Code, *nunc pro tunc* to the date of the bankruptcy filing(s), on the terms and conditions of this Agreement. The order of the bankruptcy court approving this Agreement and authorizing Gordian's retention in accordance with this Agreement shall be in form and substance acceptable to Gordian in its sole discretion. The Company shall use its reasonable best efforts (a) to cause those terms and conditions which

relate to the fees and expenses payable to Gordian hereunder to be recognized and approved in any loan documentation entered into between any such Companies and any lender and (b) to include an appropriate "carve out" from the collateral of the relevant lenders of any such Companies for the payment of the aggregate fees and expenses payable by the Company to Gordian pursuant to this Agreement.

4. <u>Fees</u>. For Gordian's services in connection with this engagement, the Company shall pay or cause to be paid to Gordian, in cash in U.S. Dollars, nonrefundable fees (collectively, "Fees") as follows:

a) $75,000 payable upon execution of this Agreement (the "Upfront Fee"); plus

b) Thereafter, subsequent monthly fees of $50,000 per month, payable beginning 30 days after the execution of this Agreement (collectively, the "Monthly Fees"); plus

c) In connection with the consummation of each Financial Transaction, fees ("Transaction Fees") payable concurrently with and as a condition to consummation of such Financial Transaction, consisting of 2.00% of the Aggregate Consideration (as defined below).

Aggregate Consideration, for purposes of calculating the Transaction Fees, shall be deemed to be the total amounts directly or indirectly paid to or for the benefit of, or otherwise realized or retained by, the Companies, their equity holders and/or their creditors (and, if applicable, any target company, its equity holders and/or its creditors) in connection with the Financial Transaction or any transaction related thereto, including, without limitation, (a) the principal amount of any debt or other obligations directly or indirectly assumed, restructured, amended, repaid, compromised, exchanged, converted, extended, refinanced, retired, credit bid or otherwise modified or satisfied, (b) the amount of any new debt and/or equity capital (or other investment or financing) committed to or raised, and (c) the value, after giving effect to the Financial Transaction, of any investments or other interests retained by any of the Companies' equity holders.

For the avoidance of doubt, it is understood that, in the event of multiple Financial Transactions, Gordian's related Transaction Fees (including any paid pursuant to the "tail" provisions of Section 14 below) shall be calculated so as to avoid duplication of payment with respect to any debt, equity or other investments or obligations to the extent that they have previously been included in the Aggregate Consideration upon which a prior Transaction Fee has been calculated (e.g., if Gordian was paid 2% on $10 million of new equity raised, then in a subsequent sale of the Company Gordian would not be paid 2% on that same $10 million if it was part of the acquired equity; <u>provided, however, that if there is any difference between the amount of the Transaction Fees calculated on such previously-included amounts, Gordian shall get the benefit of (by payment of the difference or otherwise) the greater Transaction Fee.</u>

In the event that the Aggregate Consideration comprises securities, in whole or in part, the value of such securities, for purposes of calculating the Transaction Fees, shall be the fair market value thereof, as the parties hereto shall mutually agree, on the day prior to the public announcement of the Financial Transaction; provided, however, that the value of securities with an existing public trading market shall be determined by the average of the last sales prices for such securities on the five trading days ending five days prior to the consummation of the Financial Transaction.

5. <u>Payment Terms</u>. The Transaction Fees shall be paid in full simultaneously with the closing of the Financial Transaction (and in no event later than the receipt of any portion of the Aggregate Consideration); provided that if the Aggregate Consideration may be increased, pursuant to the terms of the Financial Transaction, by contingent or deferred payments related to future earnings or operations, escrow releases or other matters, the portion of the Transaction Fees relating thereto shall be calculated and paid to Gordian when and as such contingent or deferred payments are made.

6. <u>Expenses Reimbursement</u>. In addition to the Fees described above, Gordian shall be reimbursed upon invoice for all of its reasonable out-of-pocket expenses (including legal, travel, phone, duplicating, courier and facsimile) incurred in connection with Gordian's engagement hereunder; provided, however, that Gordian shall require the prior consent of the Company (which shall not be unreasonably withheld) before incurring any legal expenses for which it is seeking reimbursement (other than pursuant to the indemnification and other provisions in Section 12 below).

7. <u>Scope of Gordian's Investigation</u>. The nature and scope of Gordian's investigation in connection with the services and matters described herein shall be as Gordian deems appropriate. Gordian shall familiarize itself with and consider, as it deems appropriate, the history and nature of the Companies' businesses, their operations, financial results and condition, properties and prospects and such other factors as Gordian deems relevant. In this regard, Gordian shall be entitled to rely entirely on publicly available information plus such other information as may be directly or indirectly furnished to it orally or in writing by any of the Companies or their respective officers, directors, managers, employees, affiliates, representatives, counsel, auditors and advisors, without independent investigation thereof, and Gordian does not hereby assume any responsibility to verify the accuracy or completeness of any such information or to conduct any appraisal of any of the Companies' assets or liabilities. The Company represents and warrants to Gordian that, to the best of its knowledge, all information it or any of the other Companies directly or indirectly furnishes to Gordian in connection with Gordian's engagement hereunder shall be true, complete and accurate in all material respects, and not materially misleading, and, in the case of projections or other forward-looking information, shall represent management's best good faith estimates of future results at the time of their provision. During the term of Gordian's engagement hereunder, the Company agrees to cooperate fully with Gordian and shall promptly make available to Gordian all such information, documents and corporate records as Gordian deems necessary or appropriate or as the Company determines is necessary to update previously furnished information or forward-looking information.

8. <u>No Guarantees</u>. Gordian does not represent or guarantee any specific result from this engagement. Gordian has not made, and is not responsible for the accuracy of, any projection of any of the Companies' operating results, solvency or value, and Gordian does not make any representation regarding or guaranty of the accuracy of any projection, other view or advice Gordian receives or provides regarding any of the Companies, their securities or their futures. The Company acknowledges that all future matters are subject to certain risks and uncertainties that could cause actual results to differ materially from those projected or otherwise addressed by Gordian.

9. <u>Gordian's Role</u>. Gordian's role shall be solely as a financial advisor to the Company's management and Board of Directors, which shall remain fully responsible for all decisions and matters as to which Gordian's advice is sought. Gordian is assuming no management responsibility with respect to any of the Companies of any nature whatsoever. Gordian's obligations to the Company and the Board of Directors are contractual in nature as expressly set forth in this Agreement and neither Gordian nor any of its affiliates, nor their respective members, partners, officers, directors, employees, agents, nor any entity or person controlling Gordian or any of its affiliates, have any fiduciary obligations to any of the Companies or their respective boards of directors, or any other person, in respect hereof. The Company acknowledges and agrees that its engagement of Gordian hereunder does not and is not intended to confer rights upon any person not a party hereto, including any security holders or creditors of, or holders of beneficial interests in, any of the Companies, as against Gordian, its affiliates, or their respective members, partners, officers, directors, employees, agents or any entity or person controlling Gordian or any of its affiliates. The obligations of Gordian under this Agreement and in respect of any transaction or conduct in connection herewith are solely limited liability company obligations of Gordian. To the full extent lawful, no affiliate of Gordian or any member, partner, officer, director, employee or agent of Gordian or such affiliate, or any person controlling Gordian or any of its affiliates, shall be subjected to any personal liability whatsoever to any of the Companies, or their respective affiliates, successors, assigns, creditors or security holders, or any other person, with respect to this Agreement or any transaction or conduct in connection herewith.

10. <u>Gordian's Advice</u>. Any advice, written or oral, provided by Gordian pursuant to this Agreement shall be solely for the information and assistance of the Company and its Board of Directors in connection with their consideration of any Financial Transaction. Except as required by law or court order, such advice is not to be used, circulated, quoted or otherwise referred to, in whole or in part, for any other purpose, provided, that the Company may disclose such advice on a confidential basis to its counsel and other advisors in connection with a Financial Transaction. Such advice shall not be filed with, included in or referred to, in whole or in part, in any registration statement, proxy statement, tender offer or any other document, nor are references to Gordian or its engagement hereunder to be made therein, except in each case in accordance with Gordian's prior written consent, which shall not be unreasonably withheld, or as otherwise required by law or court order. Except to the extent mandated by law or court order, none of: (i) the fact that Gordian is rendering advice to the Company (except that the fact that Gordian is rendering such advice may be disclosed to parties with which the Company is negotiating); (ii) any advice rendered by

Gordian to the Company; or (iii) any communication from Gordian to any of the Companies or from any of the Companies to Gordian in connection with the services performed by Gordian pursuant to this Agreement, shall be quoted or referred to orally or in writing in any public form or forum or public document by any of the Companies, or their respective agents, without Gordian's prior written authorization, which shall not be unreasonably withheld. For the avoidance of doubt, in the event of any disclosures under this paragraph mandated by law or court order, the form and content of any references to Gordian, its advice and its relationship to the Company shall (unless prohibited by the disclosure requirement) remain subject to Gordian's prior written consent, which consent shall not be unreasonably withheld. Except to the extent expressly set forth in writing by Gordian, no third party shall be entitled to rely upon Gordian's advice for any purpose whatsoever. Gordian shall bear no responsibility whatsoever for the accuracy or completeness of the Company's disclosure of Gordian's advice to any third parties (including any of the other Companies).

11. Staffing. The Company understands that Gordian does not represent that any particular Gordian professional will be solely responsible for Gordian's work product completed pursuant to Gordian's engagement and that junior Gordian professionals likely will be working on this engagement together with senior Gordian professionals. Notwithstanding the foregoing, it is understood that Peter S. Kaufman shall be one of the senior Gordian personnel responsible for providing the senior services reasonably necessary for Gordian to perform its material obligations hereunder, consistent with Gordian's usual practices and subject to any circumstances beyond Gordian's reasonable control.

12. Indemnification. The Company agrees to indemnify and hold harmless Gordian and its affiliates and their respective members, partners, officers, directors, employees, controlling persons, representatives and agents (each an "Indemnified Party") to the full extent lawful from and against, and agrees that Gordian shall have no liability to any of the Companies or their respective affiliates, successors, assigns, creditors or security holders for, any losses, claims, expenses, damages or liabilities (or actions or proceedings in respect thereof), including without limitation counsel fees and expenses, (i) related to or arising out of (x) information provided or approved by or on behalf of any of the Companies or (y) action taken or not taken by any of the Companies, or by Gordian at the Company's request or with the Company's consent, or (ii) otherwise related to or arising out of Gordian's engagement under this Agreement, or any transaction or conduct in connection therewith, except that these clauses (i) and (ii) shall not apply to the extent that any such loss, claim, expense, damage or liability is finally judicially determined to have resulted solely from Gordian's gross negligence or willful misconduct in performing the services that are the subject of this Agreement. If for any reason the foregoing indemnification is unavailable to any Indemnified Party or insufficient to hold it harmless, then the Company shall contribute to the amount paid or payable by such Indemnified Party as a result of such loss, claim, expense, damage or liability in such proportion as is appropriate to reflect not only the relative benefits received by the Companies and/or their security holders on the one hand and the Indemnified Party on the other hand, but also the relative fault of the Companies and the Indemnified Party, as well as any other relevant equitable considerations. In no event shall Gordian and the Indemnified Parties collectively have liability under this Agreement

or in respect of any transaction or conduct in connection herewith in the aggregate in excess of any cash fees actually received by Gordian hereunder, exclusive of reimbursement of expenses as provided in this Agreement and compensation as referred to below in this paragraph. Without the prior written consent of Gordian, none of the Companies shall settle any claim, litigation or other proceeding against any Indemnified Party relating to Gordian's engagement hereunder unless such settlement requires on the part of the Indemnified Party nothing more than a cash payment that one or more of the Companies actually makes, and unless such settlement includes an express release of such Indemnified Party from all claims against such Indemnified Party by all parties to such settlement, such release to be set forth in an instrument or instruments signed by or otherwise binding upon all parties to such settlement. The Company agrees to reimburse each Indemnified Party, promptly upon each request for reimbursement hereunder, for its legal and other out-of-pocket expenses (including the cost of any investigation, preparation or provision of evidence) incurred in connection with any pending or threatened action, claim, investigation or proceeding (regardless of whether Gordian is a party thereto) in respect of which indemnification or contribution may be sought hereunder or in enforcing the provisions of this Section, including, without limitation, any pending or threatened action, claim, investigation or proceeding brought by any of the Companies. If Gordian, any affiliate of Gordian, or any of their respective members, partners, officers, directors, employees, controlling persons, representatives and agents becomes involved in any threat or assertion of a claim, litigation or investigation with respect to this engagement in a manner that requires or is likely to require more than an insignificant amount of such person's time, then Gordian shall be compensated, separately from the fees and expenses provided for herein, for the time expended by such person, whether at or in preparation for meetings, depositions, trial or otherwise, at the hourly rates then in effect for such person or, if no such rate is then in effect, the hourly rate that Gordian reasonably determines. The reimbursement, indemnity and contribution agreements of the Company under this Section shall be in addition to any liability which any of the Companies otherwise may have and to any rights that Gordian may otherwise have, and shall extend upon the same terms and conditions to, and may be independently enforced by, any affiliate of Gordian and the respective members, partners, officers, directors, employees, controlling persons, representatives and agents of Gordian or any affiliate of Gordian and shall be binding upon any successors and permitted assigns of the Company and inure to the benefit of any successors, permitted assigns, heirs and personal representatives of Gordian, any such affiliate and any such persons.

13. <u>Choice of Law; Disputes; Jurisdiction; Fees</u>. THIS AGREEMENT SHALL BE GOVERNED AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE OF NEW YORK (WITHOUT REFERENCE TO ITS PRINCIPLES OF CONFLICT OF LAW). Each of the Company and Gordian agree that any and all claims, controversies or other disputes arising under this Agreement or in connection with this engagement (collectively, "Disputes") shall be heard or otherwise adjudicated exclusively by arbitration conducted in New York City by the American Arbitration Association (the "AAA"), before a single arbitrator, in accordance with the AAA's Commercial Arbitration Rules. THE PARTIES EXPRESSLY WAIVE ANY COURT (SUBJECT TO THE BALANCE OF THIS SECTION) OR OTHER ARBITRATION REMEDIES WITH

RESPECT TO ANY DISPUTES. The arbitration award entered in accordance with this Agreement shall be in writing and shall be final and binding on the parties, except to the extent it may be appealed to a court of competent jurisdiction in accordance with applicable laws governing appealability of arbitration awards. If the arbitrator determines that the Company has breached a Fee payment obligation to Gordian, then the Company shall also be liable to Gordian for, and Gordian shall be entitled to an award of, all of Gordian's costs and expenses incurred in connection with the arbitration, including its reasonable attorneys' fees and expenses. Judgment upon the award may be entered by any court having jurisdiction over the parties or their assets. The parties hereto consent to the non-exclusive jurisdiction of the federal and state courts sitting in New York City for the purpose of entering judgment upon and enforcing such an award. In addition, and notwithstanding anything to the contrary in this Section, if in connection with Gordian's engagement under this Agreement, or any transaction or conduct in connection therewith, Gordian (or other Indemnified Party) is sued or otherwise found or brought into any court, then for purposes of enforcing the indemnification and other provisions of the immediately preceding Section, Gordian (or other Indemnified Party) may (but is not required to) elect to sue, implead or otherwise claim against the Company in such court instead of pursuing an AAA arbitration, and the Company hereby consents to venue and jurisdiction in such court for such purposes.

14. <u>Termination; Survival</u>. This engagement may be terminated by the Company or Gordian at any time with or without cause, effective upon receipt of written notice to that effect by the other party, but in such circumstance the Company shall remain liable for any unpaid Fees accrued or payable at the time of termination (including for any Financial Transactions already signed but not yet consummated) and expenses incurred prior to termination. In the event of termination of this engagement the Company shall also remain liable for the Transaction Fees in accordance with the terms of this Agreement if within twelve (12) months after such termination definitive documentation is entered into with respect to a Financial Transaction and such Financial Transaction is subsequently consummated (regardless of whether other Transaction Fees, for other Financial Transactions, have already been paid). The provisions of this Section 14, Sections 5 through 13 above and Sections 15 through 17 below shall survive any termination of this Agreement and/or the completion or termination of Gordian's services pursuant to this Agreement.

15. <u>Entire Agreement; Assignment; Severability; Headings</u>. This Agreement contains the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, oral or written, between Gordian and any of the Companies with respect thereto. This Agreement shall be binding upon and inure to the benefit of any successors, permitted assigns, heirs and personal representatives of the parties. This Agreement may not be amended or modified (or a provision hereof waived), except in a writing expressly referencing this Agreement, executed by the parties hereto (or, in the case of a waiver, by the party charged with the waiver). No party hereto may assign this Agreement. In case any provision of this Agreement shall be determined to be invalid, illegal or unenforceable for any reason, the remaining provisions of this Agreement shall be unaffected and unimpaired thereby, and shall remain in full force and effect, to the fullest extent permitted by law. Section headings in this Agreement are for convenience of reference

only, and shall not affect the meaning or interpretation of this Agreement. This Agreement may be executed in two or more counterparts (including by facsimile or emailed files), all of which, taken together, shall constitute one and the same instrument.

16. <u>Publicity</u>. In the event of a consummated Financial Transaction, it is understood that Gordian may make reference to the Companies and the Financial Transaction and Gordian's role in connection therewith in its various promotional/informational materials, including, without limitation, its web site and any tombstone advertisements.

17. <u>Obligations of the Companies</u>. The Company's obligations and agreements hereunder (including, but not limited to, its payment, reimbursement, indemnification and contribution obligations and its agreements on exculpation and exclusive remedies, arbitration, venues and jurisdictions) shall be joint and several obligations and agreements of all of the Companies (whether or not the Companies individually sign this Agreement).

\* \* \*

Please confirm that the foregoing is in accordance with your understanding by signing and returning to us the duplicate of this Agreement attached hereto, which shall thereupon constitute a binding agreement.

Sincerely yours,

GORDIAN GROUP, LLC

By: _____
    Name:
    Title:

AGREED TO AND ACCEPTED:

NUO THERAPEUTICS, INC.

By: *[signature]*
    Name: David Jorden
    Title: Acting CFO

Date: 12/28/15

Sincerely yours,

GORDIAN GROUP, LLC

By: *[signature: Peter S. Kaufman]*

Name: Peter S. Kaufman
Title: President

AGREED TO AND ACCEPTED:

NUO THERAPEUTICS, INC.

By: _____
 Name:
 Title:

Date: _____