# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| Nuo Therapeutics, Inc. | : | Case No. 16-10192 (MFW) |
| Debtor. | : | Objection Deadline: June 17, 2016 at 4:00 p.m. |
| | : | Hearing Date: July 6, 2016 at 4:00 p.m. |
| | : | Related to Docket Nos. 423, 430, 431, 432 |

## LIMITED OBJECTION OF DIP LENDERS TO FINAL FEE APPLICATIONS OF PROFESSIONALS RETAINED IN THESE CASES TO THE EXTENT FEES AND EXPENSES SOUGHT EXCEED AMOUNTS IN APPROVED DIP BUDGET OR AMOUNTS OTHERWISE PERMITTED TO BE PAID PURSUANT TO THE MODIFIED FIRST AMENDED PLAN OF REORGANIZATION

Deerfield Private Design Fund II, L.P., Deerfield Private Design International II, L.P. and Deerfield Special Situations Fund, L.P. (collectively, the "Lenders"), by and through their undersigned counsel, file this limited objection to the final fee applications filed by the professionals retained in these cases,[1] and respectfully represent as follows:

### Introduction

1. The Lenders provided DIP financing to Nuo Therapeutics, Inc., as debtor and debtor-in-possession (the "Debtor"), pursuant to that certain Senior Secured, Superpriority Debtor-in-Possession Credit Agreement, dated as of January 28, 2016, as amended by that certain Waiver and First Amendment to Senior Secured, Superpriority Debtor-in-Possession Credit Agreement, dated as of March 9, 2016 (as amended, the "DIP Financing Agreement"). The DIP Financing Agreement was approved by the Court pursuant to its Final Order Under

---

[1] The Lenders did not and do not object to the final fee application filed by counsel to the Official Committee of Unsecured Creditors [D.I. 413].

Sections 105, 361, 362, 363(c), 363(e), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), and 507 of the Bankruptcy Code and Bankruptcy Rules 2002, 4001 and 9014 (i) Authorizing Debtor to Obtain Postpetition Financing; (ii) Authorizing Debtor to Use Cash Collateral; (iii) Granting Adequate Protection to Prepetition Secured Lenders; and (iv) Granting Related Relief, dated March 9, 2016 (the "Final DIP Order"). [D.I. 187].

2.  Pursuant to the Final DIP Order and the DIP Financing Agreement, the fees and expenses of professionals retained in the Debtor's chapter 11 case by the Debtor, the Official Committee of Unsecured Creditors and the fees and expenses for which cash reimbursement is sought by the Ad Hoc Equity Committee pursuant to sections 503(b)(3)(D) and 503(b)(4) of title 11 of the United States Code (the "Bankruptcy Code") were capped by amounts set forth in the Budget (as defined in the Final DIP Order) approved by the Lenders with respect to such professionals. See Final DIP Order at ¶ 17. The Budget could be amended and updated, subject to approval of the Lenders and the filing of such updated Budget with the Court, together with service of notice of such updated Budget on the Official Committee of Unsecured Creditors (the "Committee"), the Ad Hoc Equity Committee and the U.S. Trustee, as provided in paragraph 10(c) of the Final DIP Order. The final, updated Budget approved by the Lenders was filed with the Court on April 24, 2016 [D.I. 357] and is attached hereto as Exhibit "A".

3.  The second page of the Budget (the last page of Exhibit A) sets forth in the top half thereof the budgeted fees and expenses for each professional retained by an order of the Court in the case (the "Professionals") as follows: (i) the Debtor's lead counsel – Dentons US LLP ($1,133,000), (ii) the Debtor's local counsel – Ashby & Geddes, P.A. ($278,000), (iii) the Debtor's Chief Restructuring Officer -- Winter Harbor LLC ($503,000), (iv) the Debtor's investment banker – Gordian Group, LLC (monthly fees only) ($217,000), (v) the Debtor's

2

claims and balloting agent – Epiq Bankruptcy Solutions, LLC ("Epiq") ($192,000), and (vi) the Committee's counsel – Pepper Hamilton LLP ($368,000).[2]

4. Pursuant to an order dated April 25, 2016 [D.I. 367], the Court confirmed the Debtor's Modified First Amended Plan of Reorganization dated April 25, 2016 (the "Plan"). The Plan contains certain provisions regarding the fees and expenses of the Professionals, including the fees and expenses of the professionals and members of the Ad Hoc Equity Committee sought pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code based on a substantial contribution to the case. The following provisions of the Plan, set forth in Section 4.1(c) thereof, are relevant:

    a) The Plan provides that Allowed Professional Fee and Expense Claims[3] approved by the Court are to be paid in full, subject to the limits set forth in the Budget; provided, however, that a Professional (including Professionals for the Ad Hoc Equity Committee) may seek payment in excess of the amount budgeted to such Professional in the Budget to the extent other "non-Lender" professionals seek less than the fee and expense amounts Budgeted for such non-Lender professionals (a "Professional Budget Surplus"). The amounts in the Budget for the Lenders' professionals, to the extent not incurred by them, are not available for use by other Professionals. The amounts budgeted for the Debtors' and Committee's professionals aggregated $2,691,000 (see paragraph 3 above), which amount excludes Gordian Group's success fee;

    b) In the event of a Successful Capital Raise by the Debtor (which occurred here), subject to approval of the Court in a final fee application, Gordian Group is entitled to a $400,000 success fee. The Lenders are responsible for $100,000 of such success fee;

---

[2] Although there is a budgeted amount of $168,000 for the Ad Hoc Equity Committee from what had previously been $135,000, the Lenders failed to notice the increase in their review of the updated Budget which was prepared and filed on the eve of the confirmation hearing and oppose any increase above $135,000. As set forth in paragraph 4 below, the confirmed Plan (as defined below) expressly caps the cash amount payable to the Ad Hoc Equity Committee at $135,000. Indeed, the application of the Ad Hoc Equity Committee for compensation pursuant to sections 503(b)(3)(D) and 503(b)(4) of the Bankruptcy Code [D.I. 427] (the "Substantial Contribution Application"), scheduled to be heard by the Court on June 20, 2016, acknowledges the cash cap and seeks to recover another $38,942 in cash pursuant to the provision of the Plan described in paragraph 4(a) hereof.

[3] Capitalized terms not defined herein, have the meanings given to them in the Plan.

c) In the event of a Successful Capital Raise, the Debtor's Professionals (other than Gordian Group), which consist of their lead and local counsel, the Debtor's Chief Restructuring Officer and Epiq, are entitled to seek professional fees and expenses in excess of the amounts set forth in the Budget up to an aggregate of $150,000 payable solely from the proceeds of the Successful Capital Raise (in addition to the unused Budgeted amounts available from non-Lender professionals as described in subparagraph (a) above); and

d) Subject to allowance under sections 503(b)(3)(D) or 503(b)(4) of the Bankruptcy Code, only $135,000 in the aggregate of the fees and expenses of the Ad Hoc Equity Committee's professionals and its members are payable in cash. In the event of a Successful Capital Raise, allowed fees and expenses of the Ad Hoc Committee's professionals in excess of the $135,000 cash cap are payable in New Common Stock of the Reorganized Debtor.

### **Limited Objection of the Lenders**

5. With the exception of Winter Harbor LLC (the Debtor's Chief Restructuring Officer), all of the professionals in the case have filed final fee applications.[4] Only a portion of Epiq's fees (for consulting services as balloting agent), however, are subject to the requirement of a final fee application. Accordingly, not all of the professional fees and expenses provided for in the Budget are subject to a final fee application. Nevertheless, in calculating the Professional Budget Surplus that may be available, all of the fees and expenses paid or payable to such non-Lender professionals must be counted, whether or not subject to a final fee application.

6. It appears after reviewing the Budget and the final fee applications, and upon information and belief concerning fees and expenses of Winter Harbor and Epiq not subject to a final fee application, that local counsel for the Debtor (Ashby & Geddes, P.A.), Winter Harbor, Gordian Group (as to its monthly fees), and counsel for the Committee (Pepper Hamilton LLP), have sought or are seeking less than their Budgeted amounts, providing a Professional Budget

---

[4] The Court's order, dated February 2, 2016, authorizing Winter Harbor's engagement [D.I. 131] provides that if Winter Harbor seeks reimbursement for attorneys' fees or expenses, a fee application for such fees and expenses would be required. The Lenders are not aware of any attorneys' fees or expenses that will be sought by Winter Harbor.

Surplus that may be used by Professionals seeking more than their Budgeted amounts. Assuming the Court were to grant without any reduction the final fee and expense requests of those firms seeking less than their Budgeted amounts, for purposes of the provision described in paragraph 4(a) hereof, there is a Professional Budget Surplus of approximately $194,000.

7. Lead counsel for the Debtor, Dentons US LLP, is seeking approximately $122,000 more in fees and expenses than is in the Budget. Between what Epiq has been paid to date and is seeking in its final fee application, the Lenders understand that Epiq will be over its Budgeted amount by approximately $65,000. Finally, the Ad Hoc Equity Committee in its Substantial Contribution Application is seeking approximately $39,000 above the $135,000 cash cap in the Plan.[5] Accordingly, the fee and expenses sought by Professionals *in excess* of the projected Professional Budget Surplus are approximately $32,000. Such amount can be paid from the $150,000 available under the Plan from the Successful Capital Raise as described in paragraph 4(c) above. Although the Lenders have no objection to use of capital raise proceeds to cover such difference, that is an issue more appropriately dealt with by the Debtor.

8. The Lenders submit this limited objection to oppose any payment from DIP loan proceeds to professionals beyond their Budgeted amounts plus their share of the Professional Budget Surplus, in all events, only to the extent allowed by the Court. The precise amount of the Professional Budget Surplus cannot be finally determined until the Court rules on the final fee applications.

WHEREFORE, the Lenders respectfully request that any order entered allowing fees and expenses of professionals in this case in excess of the amounts contained in the Budget (or as

---

[5] The Lenders filed a limited objection to the Substantial Contribution Application [D.I. 455] to protect against any overpayment to the Ad Hoc Equity Committee from proceeds of the DIP financing.

limited by the Plan), prohibit payment of such excess from DIP loan proceeds except to the extent permitted by Section 4.1(c) of the Plan from the Professional Budget Surplus, and grant such other and further relief as is just.

Dated: June 17, 2016

CONNOLLY GALLAGHER LLP

/s/ Jeffrey C. Wisler
Jeffrey C. Wisler (No. 2795)
1000 N. West Street, Suite 1400
Wilmington, DE 19801
Telephone: (302) 757-7300
Facsimile: (302) 658-0380
Email: jwisler@connollygallagher.com

and

Jeff J. Friedman, Esq.
KATTEN MUCHIN ROSENMAN LLP
575 Madison Avenue
New York, NY 10022-2585
Telephone: (212) 940-7035
Facsimile: (212) 940-7109
Email: jeff.friedman@kattenlaw.com

*Counsel for Deerfield Private Design Fund II, L.P., Deerfield Private Design International II, L.P., and Deerfield Special Situations Funds, L.P.*